[No. 239-41082-1. Division One. July 6, 1970.]
Panel 1

ROBERT R. BAKER, *Appellant*, v. THE CITY OF SEATTLE *et al.*, *Respondents*.

*Levinson & Friedman* and *Robert D. Duggan*, for appellant.

*Jack E. Hepfer*, for respondents.

**REVIEW GRANTED BY SUPREME COURT**

FARRIS, J.—On July 7, 1967, Robert Baker was a patron of the Jackson Park Municipal Golf Course in Seattle. While there he sustained personal injuries when the electric golf cart which he had rented turned over.

The defendants Paul Billingsley and his wife were engaged in the business of leasing golf carts at Jackson Park with the permission of the defendant, City of Seattle, which received a portion of the rental fees. The accident occurred while Baker was returning the cart after playing 18 holes without incident.

The trial judge granted the defendants' motion for sum-

mary judgment on the grounds that a "disclaimer of liability" in the rental agreement barred recovery.[1]

The scope of the exculpatory clause is not questioned; if it is valid, it is an effective bar to plaintiff's action. The plaintiff argues that the disclaimer of liability clause should be declared void as contrary to public policy. He argues that such a clause in a form rental agreement is not bargained for, but offered on a "take it or leave it" basis. In

---

[1]

# GOLF CART RENTAL AGREEMENT

### LESSOR - Westweld Metal Works

GOLF COURSE _____ JA _____ DATE 7/7 19 67

LESSEE - CUSTOMER _____ Robert R. Baker

ADDRESS _____ 26723 54th Ave W.

CITY - STATE _____ Lynnwood, Wash

CART NO. _____ O _____ NO. OF HOLES _____ 18 _____ AMOUNT 3 66

The above numbered MODEL TEE Golf Cart is hereby leased to the lessee for the number of holes of play on the date and on the golf course indicated above. If Lessee retains said cart after expiration thereof, such retention shall be construed as a new rental at the same rate of rental, and under the same terms and conditions as contained in this agreement. Said cart is not to be removed from the above named golf-course and is to be returned promptly to the Lessor after use. Lessee represents that he is familiar with the use and operation of said cart. Lessee agrees to keep said cart in the Lessee's custody and not to sub-lease or re-rent same. Lessee agrees to keep and return said cart in the same condition as when received. Lessee agrees that in using said cart, he does so at his own risk. It is expressly understood and agreed that the Lessor shall not be liable for any damages whatsoever arising from injuries to the person and/or property damage or loss, of the Lessee arising from the use of, operation of, or in any way connected with said cart or any part thereof, from whatever cause arising. All provisions contained herein constitute the entire and exclusive agreement between the parties. Any promises, representations, understanding and/or agreement pertaining directly or indirectly to the agreement which are not contained herein, are hereby waived. The receipt of the above described cart, in good order and repair, is hereby acknowledged by Lessee.

THIS CART SHALL BE USED SOLELY FOR THE PURPOSES DESIGNED AND NO MORE THAN ONE PERSON AND TWO GOLF BAGS SHALL BE ON SAID CART AT ANY ONE TIME.

3448 _____ Robert Bak
(CUSTOMER) - LESSEE

Flatpakit ® Moore Business Forms, Inc

support of this argument he cites *Thomas v. Housing Auth.*, 71 Wn.2d 69, 426 P.2d 836 (1967).

█ In *Thomas,* the Supreme Court refused to recognize the validity of a disclaimer clause similar to the one in issue. It did so on the basis that the clause was inconsistent with the statutory public duty of providing safe and sanitary housing for persons of low income. It did not overrule the line of cases establishing the right to contract for protection from one's own negligence. *Broderson v. Rainier Nat'l Park Co.,* 187 Wash. 399, 60 P.2d 234 (1936); *Griffiths v. Henry Broderick, Inc.,* 27 Wn.2d 901, 182 P.2d 18, 175 A.L.R. 1 (1947); *Union Pac. R.R. v. Ross Transfer Co.,* 64 Wn.2d 486, 392 P.2d 450 (1964).

The *Broderson* case involved a recreational activity, as here. The plaintiff was injured while riding on a rented toboggan after having entered into a similar agreement. The Supreme Court rejected the public policy arguments against the validity of the exculpatory clause.

The doctrine of strict liability as applied in Washington is set forth in the Restatement (Second) of Torts, § 402A (1965) which provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The basis for the rule is the special responsibility for the safety of the public which one who supplies the public with

products must undertake. See Restatement (Second) of Torts, § 402A, comment ƒ (1965) at 350.

In adopting the language of strict liability as set forth in Restatement (Second) of Torts, § 402A (1965) the Supreme Court declined to pass upon the applicability of the rule to sellers other than manufacturers, reserving these questions until they are properly before the court. *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 452 P.2d 729 (1969).

We are impressed with the logic of appellant's argument which equates a lessor with a seller. We have also reviewed the California decisions wherein the doctrine of strict liability has been extended.[2] We also recognize the direction that the doctrine of strict liability is taking,[3] but we agree with the decision in *McCutcheon v. United Homes Corp.*, 2 Wn. App. 618, 620, 469 P.2d 997 (1970):

> In light of this state's policy of validating exculpatory agreements in general, *Griffiths v. Henry Broderick, Inc.*, *supra*, and in the absence of any legislative expression to the contrary, we can discern no public policy which is violated by the exculpatory clause in question. We view this as an area for distinct concern because of the potentiality for unwarranted abuse, but nevertheless deem this a subject peculiarly appropriate for legislative, rather than judicial, action.

Affirmed.

JAMES, C. J., and SWANSON, J., concur.

---

[2] The California court has held that the test of strict liability is whether the article or chattel is placed on the market knowing that it is to be used without inspection for defects. *See Price v. Shell Oil Co.*, ........ Cal. 2d ........, 79 Cal. Rptr. 342, 348 (1969). The California Court of Appeals has recently extended the doctrine to lessors of equipment (defective stepladder). *McClaflin v. Bayshore Equip. Rental Co.*, —— Cal. 2d ........, 79 Cal. Rptr. 337 (1969).

[3] *See* 45 Wash. L. Rev. 431 (1970).